In the Matter of the Complaint of NAUTI-LUS MOTOR TANKER CO., LTD., as Owner of the M/T BT Nautilus for Exoneration from or Limitation of Liability.

Civ. A. No. 90–2419.

United States District Court,
D. New Jersey.

Sept. 12, 1994.

See also 862 F.Supp. 1260.

Goldstein Till & Lite by Andrew J. Goldstein, Newark, NJ and Haight, Gardner, Poor & Havens by John J. Reilly, New York City, for limitation plaintiff Nautilus Motor Tanker Co., Ltd.

Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden by Richard H. Webber and Robert E. Daley, New York City, for limitation defendant Coastal Oil New York, Inc.

## OPINION

BASSLER, District Judge:

This matter comes before the Court on three evidentiary motions arising during the course of trial. Limitation Plaintiff, Nautilus Motor Tanker Co., Ltd. ("Nautilus"), moves to: (1) suppress opinions and conclusions from the United States Coast Guard report; and (2) introduce into evidence prior inconsistent statements from the deposition of

Thomas Junay dated February 3, 1992. Limitation Defendant, Coastal Oil New York, Inc. ("Coastal"), moves to exclude a sketch drawn at trial by one of Coastal's witnesses, James Doran, on cross-examination. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333(1). For the foregoing reasons, the Court denies plaintiff's motion to suppress portions of the Coast Guard report, grants in part and denies in part plaintiff's motion to admit the prior inconsistent statements, and denies defendant's motion to exclude the sketch drawn by James Doran.

## I. BACKGROUND

This action arises from the grounding of the B.T. Nautilus Motor Tanker in the Kill van Kull waterway on June 7, 1990. As a result of the grounding, approximately 230,-000 gallons of fuel oil were spilled into the water (Exh. 435 at 1). Nautilus brings this action in admiralty against Coastal, the marine terminal owner and operator, seeking exoneration from or limitation of liability to several claimants.

## II. DISCUSSION

A. Admissibility of conclusions and opinions in United States Coast Guard Report

Nautilus contends that portions of the United States Coast Guard report which contain conclusions and opinions should not be admissible into evidence. The specific portions of the report which Nautilus seeks to suppress are: (1) the investigating officer's conclusions regarding the apparent cause of the grounding (Coast Guard Report ("Report") at 1, paragraph # 2); (2) the assessment of fault on behalf of any other government agency or party (Report at 4–5, paragraph # 18); and (3) recommendations for future procedures made by the commanding officer based on his reading of the report (Report, first two unnumbered pgs.). (Tr. 2488:12–2489:5 (1/12/94)).

Nautilus makes the following arguments: (1) the Coast Guard report is not trustworthy and therefore should not be admitted pursuant to Federal Rule of Evidence 803(8)(C); (2) a regulation providing that such reports of marine casualties "are not intended to fix civil or criminal responsibility" precludes the admissibility of the report (46 C.F.R. § 4.07–1(b)); and (3) even if admitted into evidence, the Court should give the report little weight because it is speculative and unreliable.

1. *Admissibility pursuant to Federal Rule of Evidence 803(8)(C)*

   a. *General Application of Beech Aircraft decision*

■ Federal Rule of Evidence 803(8)(C) provides, in relevant part, that the following items are exceptions to the hearsay rule:

> Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the government in criminal cases, *factual findings* resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

(emphasis added). The United States Coast Guard report prepared on the grounding of the BT Nautilus at Coastal Oil Terminal on June 7, 1990, is a public record which fits within the context of this particular rule.

■ The United States Supreme Court has extended the application of this hearsay exception to include portions of investigatory reports which contain factually based conclusions, and are otherwise admissible under Rule 803(8)(C), as long as the conclusions satisfy the Rule's trustworthiness requirement. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988). Similarly, evaluative opinions contained in investigatory reports are within the scope of Rule 803(8)(C). *See Moss v. Ole South Real Estate Inc.,* 933 F.2d 1300 (5th Cir.1991).

■ In *Beech Aircraft,* the Supreme Court enumerated the following four factors to be considered when evaluating the trustworthiness of such reports: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. *Beech Aircraft,* 488 U.S. at 167, n. 11, 109

S.Ct. at 449, n. 11. This District suggested the finality of the findings made in the report as a fifth criterion of trustworthiness. *Complaint of Munyan,* 143 F.R.D. 560, 564 (D.N.J.1992). *See also Gentile v. County of Suffolk,* 926 F.2d 142, 151 (2d Cir.1991). The factors are nonexclusive (*see, e.g., Taylor v. Bouchard Transp. Co., Inc.,* 1991 A.M.C. 2423, 2426, 1991 WL 107279 (S.D.N.Y.1991); *Munyan,* 143 F.R.D. at 564), and the admission of such conclusions are ultimately subject to the safeguard of contradicting evidence presented by the opponent which may diminish their weight. *Beech Aircraft,* 488 U.S. at 168, 109 S.Ct. at 449.

District Courts in the Third and Second Circuits have interpreted the *Beech Aircraft* decision broadly in admitting Coast Guard investigatory reports into evidence. For example, in *Munyan,* the Court applied the four factors from *Beech Aircraft* and found a Coast Guard report on a boating accident to be trustworthy and therefore admissible into evidence. *Munyan,* 143 F.R.D. at 564. Similarly, in *Taylor,* the Court admitted a Coast Guard report in plaintiff's personal injury claim resulting from a boating accident, relying on "the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Taylor,* 1991 A.M.C. at 2426 (citing *Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 805 F.2d 49, 54 (2d Cir.1986)).

While *Beech Aircraft* dealt with the admission of a JAG report, the distinction between such report and a United States Coast Guard report is irrelevant for purposes of admissibility under Federal Rule of Evidence 803(8)(C). For example, various Circuit Courts have analyzed the admissibility of different types of investigatory reports under this rule in deciding whether to include or exclude information in the reports. *See, e.g., Clark v. Clabaugh,* 20 F.3d 1290 (3rd Cir. 1994) (district court did not abuse discretion in admitting PA State Police Report which contained opinions and conclusions); *Gentile v. County of Suffolk,* 926 F.2d 142 (2d Cir. 1991) (state commission report was admissible); *U.S. v. Costanzo,* 581 F.2d 28 (2d Cir. 1978) (IRS audit reports were inadmissible

because they were irrelevant); *Puerto Rico Ports Auth. v. M/V Manhattan Prince,* 897 F.2d 1 (1st Cir.1990) (nautical accident report was admissible); *Lubanski v. Coleco,* 929 F.2d 42 (1st Cir.1991) (conclusions in state trooper's accident report were presumed admissible but were not admitted on appeal due to harmless error); *U.S. v. MacDonald,* 688 F.2d 224 (4th Cir.1982) (findings and conclusions of Army officer's pretrial investigatory report were unhelpful to trier of fact and therefore inadmissible).

The aforementioned cases illustrate that the Supreme Court's analysis in *Beech Aircraft* of the Coast Guard report's admissibility pursuant to Rule 803(8)(C) is generally applicable to investigatory reports prepared by public entities, regardless of the specific category of report. Under the *Beech Aircraft* analysis, this Court finds that the Coast Guard report, inclusive of its opinions and conclusions, is admissible pursuant to Rule 803(8)(C).

### b. *Trustworthiness of the United States Coast Guard Report*

Nautilus contends that the Coast Guard report is not trustworthy and therefore should not be admitted into evidence. Applying the four factors to be used in considering trustworthiness as stated in *Beech Aircraft,* Nautilus claims that the Coast Guard report is untrustworthy because it was prepared in an untimely manner, was not based on a contemporaneous investigation of the casualty, and fails to state important evidence concerning an obstruction within the ship berth. (Nautilus's Evid.Mem. at 7–8). For the reasons set forth below, the Court finds that the conclusions and opinions contained in the United States Coast Guard report meet the criteria for trustworthiness as set forth in *Beech Aircraft,* and should be admitted into evidence pursuant to Federal Rule of Evidence 803(8)(C).

■ First, to exclude evidence which falls under this rule, Nautilus must make "an affirmative showing of untrustworthiness, beyond the obvious fact that the declarant is not in court to testify." *Bradford Trust Co. v. Merrill Lynch Pierce, Fenner, and Smith, Inc.,* 805 F.2d 49, 54 (2d Cir.1986) (quoting *Kehm v. Proctor & Gamble Manufacturing*

*Co.,* 724 F.2d 613, 618 (8th Cir.1983). Federal Rule of Evidence 803(8)(C) explicitly excepts from the hearsay rule such public records and reports, which result from investigations made pursuant to authority granted by law, because they contain inherent indicia of trustworthiness. *Clark v. Clabaugh,* 20 F.3d at 1294. Since Federal Rule of Evidence 803(8)(C) "is premised on the assumption that public officers perform their duties properly without motive or interest other than to submit accurate and fair reports," (*Bradford Trust* at 54), Nautilus faces a heavy burden in proving the Coast Guard report's untrustworthiness.

Second, in utilizing the factors set forth in *Beech Aircraft,* it is important to note that no one factor is dispositive, and that "there is no requirement that an investigator make use of all available materials in order to compile a trustworthy report for the purpose of Rule 803(8)(C)." *Taylor,* 1991 A.M.C. at 2428. Instead, it is the overall completeness and finality of the report which matter. *See e.g., Id.; Gentile v. County of Suffolk,* 129 F.R.D. 435, 458 (E.D.N.Y.1990); *United Air Lines, Inc. v. Austin Travel Corp.,* 867 F.2d 737, 742–3 (2d Cir.1989) (where district court excluded portions of government reports because of interim and inconclusive nature).

Applying the factors suggested in *Beech Aircraft,* Nautilus' arguments that the report is untrustworthy are unpersuasive. For example, with respect to the first factor of timeliness, it appears at first glance that the Coast Guard report was completed in an untimely manner. While the grounding took place on June 7, 1990, the investigating officer did not submit the report to the commanding officer until September 14, 1993. (Report at 1). However, a logical explanation for this delay is that criminal investigations were under way for Captain Ainscough and the docking pilot, which prevented the taking of their depositions. (Tr. 13:5–25 (12/6/93)). Their depositions were finally taken in early 1993, while all other reports and findings contained in the Coast Guard report (e.g., accident reports, dive reports, and other shipping logs) were completed by no later that January 1991. Therefore the delay in the *final* report preparation was

reasonable, and not all material contained within the report was necessarily untimely.

Nautilus also disputes the skill of the Coast Guard investigator, which is the second factor in *Beech Aircraft.* Nautilus argues that since a Marine Board of investigators was not selected to conduct an investigation, the resulting trustworthiness of the Coast Guard report is diminished. (Nautilus' Evid.Mem. at 2–3). In addition, Nautilus alleges that since the investigating officer did not conduct any hearings (third factor in *Beech Aircraft* ) and left out various pieces of information concerning Coastal's dredging and the grounding, the report is untrustworthy.

■ These factual assertions, however, are not sufficiently convincing to show that the report is untrustworthy. The absence of an evidentiary hearing alone does not affect admissibility when other indications of trustworthiness are present. *Munyan,* 143 F.R.D. at 565. In determining admissibility, the Court must only consider whether the report was compiled in a way that indicates that its conclusions could be relied upon, not whether the Court agrees with the conclusions. *Moss v. Ole South Real Estate Inc.,* 933 F.2d at 1307. In doing so, the Court should permit the conclusions to be used as evidence by the trier of fact in determining the ultimate weight and credibility which should be attached to them. *Bradford Trust,* 805 F.2d at 54.

Finally, there is no reason to suspect that the reports were prepared with possible bias with a view to litigation, which is the fourth factor in *Beech Aircraft.* Again, since the Coast Guard was not a party to the action, it was merely doing its job pursuant to 46 C.F.R. § 4.07–1(c)(1)–(5) in preparing the report. In conclusion, since Nautilus has not made the requisite "affirmative showing of untrustworthiness" with respect to the conclusions and recommendations contained in the Coast Guard report, these portions of the report will be admitted into evidence.

2. *Application of 46 C.F.R. § 4.07–1(b) as set forth in Huber v. United States*

■ Nautilus argues that the following applicable Federal Regulation precludes the admissibility of the Coast Guard report:

investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, *and are not intended to fix civil or criminal responsibility.*

(emphasis added). 46 C.F.R. § 4.07–1(b).

Nautilus' argument in favor of inadmissibility is faulty for several reasons. First, its reliance on the Ninth Circuit's decision in *Huber v. United States,* 838 F.2d 398 (9th Cir.1988), which applies Section 4.07–1(b), is misplaced. In *Huber,* the Court held that 46 C.F.R. § 4.07–1(b) barred the admission of conclusions in a United States Coast Guard report even though they would normally be admissible as admissions of party-opponents under Federal Rule of Evidence 801(d)(2). *Huber,* 838 F.2d at 403.

The analysis in *Huber,* and subsequently in *Petition of Cleveland Tankers, Inc.,* 821 F.Supp. 463 (E.D.Mich.1992), should not be applied to this case because here the Coast Guard is only acting as an objective third party in preparing the report, as opposed to an involved party in the lawsuit in *Huber.* It follows that the policy rational advanced in *Huber,* that such investigatory reports should not be used to assign civil or criminal responsibility so that the most candid and open reports be produced for public safety, is also not applicable to this case. *Huber,* 838 F.2d at 402. Here the Coast Guard is not a party and therefore would have no personal interest in concealing facts or selectively representing the information.

The *Huber* and *Cleveland Tankers* cases, upon which Nautilus heavily relies, deny admission of conclusions under a rule of evidence which is not applicable to this case, Federal Rule of Evidence 801(d)(2). Rule 801(d)(2) deals with admissions by party-opponents and has no bearing here because the Coast Guard is not a party in the lawsuit. Furthermore, a third case cited by Nautilus, *Complaint of American Export Lines, Inc.,* 73 F.R.D. 454 (S.D.N.Y.1977), which refused to allow conclusions in Coast Guard reports under Federal Rule of Evidence 803(8)(C), has been implicitly overruled by the Supreme Court's decision in *Beech Aircraft.*

In *Beech Aircraft,* the United States Supreme Court resolved the longstanding conflict among the Federal Courts of Appeals over whether Rule 803(8)(C) extended to conclusions and opinions in public reports, and its affirmative ruling on admissibility is controlling. *Beech Aircraft,* 488 U.S. at 156, 109 S.Ct. at 443. Thus the argument that 46 C.F.R. § 4.07–1(b) precludes the admissibility of conclusions in Coast Guard reports "which are otherwise admissible under Federal Rule of Evidence *803(8)(C)*" (emphasis added) is essentially unsupported by case law in the Federal Courts and is defeated by *Beech Aircraft.*

Even if the analysis in *Huber* were controlling here, the operation of Section 4.07–1(b) would dictate a different result in this case. Section 4.07–1(b) essentially precludes an otherwise admissible Coast Guard report from fixing civil or criminal responsibility. While the Ninth Circuit found that the Coast Guard report in *Huber* did fix such responsibility, the Coast Guard report which Nautilus seeks to exclude does not directly do so. Although it is true that the report assesses fault or lack thereof as it was required to do by law, it does not fix legal culpability. *See* 46 C.F.R. § 4.07–1(c)(1)–(5).

The ultimate fixing of responsibility or liability as a legal concept extends beyond mere conclusions by the reporting party. For example, in determining whether a party is liable for negligence, the trier of fact must find that a breach of a duty occurred, that a causal connection existed between the breach and plaintiff's alleged damages, and that plaintiff actually sustained damages. *See Stanley Co. of America v. Hercules Powder Co.,* 16 N.J. 295, 108 A.2d 616 (1954); *Driscoll v. State, Dept. of Treasury, Div. of Lottery,* 265 N.J.Super. 503, 627 A.2d 1167 (1993). By assessing misconduct and fault, the Coast Guard was simply reporting on what was likely to have happened on June 7, 1990, based on its own factual investigations. The Court must take that information and use it as appropriate to make its legal and factual conclusions.

The reporting party in marine casualties and accidents is *charged* with determining the cause of the accident and whether there

is evidence of any misconduct or negligence on the part of any "licensed or certificated man" or any other person. 46 C.F.R. § 4.07–1(c)(1)–(5). Such information gathered in performing authorized investigations could be potentially helpful to the trier of fact in shedding light on a series of events shrouded in the murky depths of the Kill van Kull, but is not designed to be dispositive for purposes of fixing legal liability.

Ultimately, this Court will rely on *all* evidence presented at trial in formulating its own legal conclusions regarding negligence and liability. *See Puerto Rico Ports Authority v. M/V Manhattan Prince,* 897 F.2d 1, 8 (1st Cir.1990). For this reason, the Court does not address the specific question of whether *legal* conclusions are admissible pursuant to Rule 803(8)(C). See *Beech Aircraft,* 488 U.S. at 170, note 13, 109 S.Ct. at 450, note 13 (where the Supreme Court explicitly stated that it expressed no opinion on whether legal conclusions contained in official reports were admissible as "findings of fact" under Rule 803(8)(C)); *Cf. Hines v. Brandon Steel Decks, Inc.,* 886 F.2d 299 (11th Cir. 1989) (where the Court held that legal conclusions in OSHA reports fell outside the purview of Rule 803(8)(C) because the *jury* had no way of knowing whether preparer of report was cognizant of legal requirements supporting the conclusion). The Court concludes, nevertheless, that the opinions and conclusions in the Coast Guard report do not fix civil or criminal responsibility and are admissible notwithstanding Section 4.07–1(b).

3. *Speculative or conjectural nature of the United States Coast Guard Report*

█ As a final argument, Nautilus contends that even if the Coast Guard report is admitted into evidence (presumably *all* of the report), the report should be given little weight because it is unreliable and speculative in nature. (Nautilus br. at 8–9). Having

concluded that the Coast Guard report is trustworthy, the Court relies on its discussion in section (1)(b) of the opinion above and finds that this argument is without merit.

B. Prior inconsistent statements made by Thomas Junay

Nautilus seeks to admit several excerpts from the deposition transcript of Mr. Thomas Junay dated February 3, 1992. Mr. Junay, a commercial diver, was hired by Coastal to perform underwater inspections of the vessel and the surrounding area of impact on June 8 and June 9, 1990. Mr. Junay subsequently testified as to his findings on the dives in the deposition in question.

At trial, Mr. Junay testified as an expert witness for Coastal. Immediately following the cross-examination of Mr. Junay by Nautilus' counsel and after Mr. Junay had been excused by the Court, Nautilus' counsel moved to admit the transcript of the February 3, 1992, deposition pursuant to Federal Rule of Evidence 801(d)(1)(A). (Tr. 1638:9–13, 1639:1–10 (12/28/93)). At that time the Court denied Nautilus' alternate offering of the transcript pursuant to Federal Rule of Evidence 803(5) on the grounds that the Rule was being misapplied.[1]

While Nautilus initially offered Mr. Junay's deposition on several points which it believed that Mr. Junay had contradicted at trial (Tr. 1639:22–1640:19 (12/28/93)), it did not specifically identify the alleged inconsistent statements in the deposition until the second to last day of trial (Tr. 2481:23–2482:5 (1/12/94)). Counsel for Coastal first objected to the offering of evidence, stating that it was inappropriate to the extent that it was not being offered for impeachment. (Tr. 1640:20–24 (12/28/93)). On the second to last day of trial, Nautilus specified in a Supplemental Memorandum the four specific excerpts from Junay's deposition which it proposed to offer into evidence as prior inconsis-

---

1. The applicability of Rule 803(5) is no longer at issue for the following reasons. At trial, the Court found the rule inapplicable to the admission of the deposition as Mr. Junay was present to testify as to his recollections and Nautilus failed to reference his deposition transcript while cross-examining him. This failure to use the transcript in a timely manner caused the court to

deny Nautilus' motion without prejudice to having Nautilus brief the issue and renew the motion. Since Nautilus failed to raise Rule 803(5) in all supplemental briefings, the admissibility of the deposition transcript pursuant to Rule 803(5) is a moot issue. (*See* Tr. 1639:9–1641:5 (12/28/93)).

tent statements. Coastal again objected to the admissibility of the statements.

The Court declined to admit the deposition, but agreed to revisit its ruling in the event that Nautilus presented additional arguments. After receiving briefs and further explanation on the issue from both parties, the Court now holds as follows:

> 1. The following excerpts of Junay's deposition transcript dated February 3, 1992, are admissible as prior inconsistent statements: 40:11–42:7, 93:3–12, 31:2–9;
> 2. The following excerpts of Junay's deposition transcript dated February 3, 1992, are not admissible as prior inconsistent statements: 27:24–30:25, 42:8–14, 42:20–22, 78:11–79:2, 11:21–11:22, 15:10–16:11; and
> 3. The following excerpt of the same deposition is admissible as an admission of a party-opponent: 11:23–15:9.

> 1. *Admissible deposition excerpts pursuant to Federal Rules of Evidence 801(d)(1)(A) and 613(b)*

■ Federal Rule of Evidence 801(d)(1)(A) provides, in relevant part:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition ...

Rule 801(d)(1)(A) permits the use of prior inconsistent statements as substantive evidence provided that all criteria described above are met. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence,* § 801(d)(1)(A)[01] (1992).

Federal Rule of Evidence 613(b) governs foundational requirements for the introduction of prior inconsistent statements, which are made by witnesses who have testified before the court, as extrinsic evidence. 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence,* § 613[01] (1992). Rule 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportu-

nity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

With respect to the three excerpts from the deposition which the Court admits into evidence as prior inconsistent statements (Dep.Tr. 40:11–42:7, 93:3–12, 31:2–9 (2/3/92)), the Court holds that the foundation requirement as set forth in Rule 613(b) above has been met. Coastal concedes to the admissibility of one excerpt, 93:3–12, on these grounds. The Court finds that in all three cases Nautilus' counsel confronted Mr. Junay with the inconsistent statements from his deposition and gave him the opportunity to explain or deny them. (Tr. 1600:14–1601:10, 1603:19–1604:16, 1598:4–11, 1580:23–1581:11, 1597:3–14 (12/28/93)).

After Nautilus had introduced the inconsistent statements, Coastal's counsel could have interrogated Mr. Junay in attempt to further explain the statements. Coastal did not do so, and therefore waived its right to object to the admissibility of these particular statements. *See Wilmington Trust Co. v. Manufacturers Life Ins.,* 749 F.2d 694, 698–99 (11th Cir.1985) (where prior testimony contradicting a witness' testimony at trial was introduced, and counsel did not request that witness be recalled to explain testimony or that case be reopened, the Court held that the provision for confrontation had been waived).

■ Rule 613(b) modifies the traditional requirement of having to first confront the witness with a prior inconsistent statement before introducing the statement as extrinsic evidence. *See Wammock v. Celotex Corp.,* 793 F.2d 1518, 1521 (11th Cir.1986). Under Rule 613(b), all that is required to introduce the statement as evidence is to afford the witness an opportunity to explain the statement at some point in the proceedings. No particular sequence or timing is necessary. *Id.* at 1521–22. Nautilus clearly met the requirements of Rule 613(b) in confronting

Mr. Junay with the three aforementioned deposition excerpts.

### 2. *Inadmissible deposition excerpts*

■ Counsel for Nautilus did not comply with Rule 613(b)'s foundation requirement in attempting to introduce six excerpts from Mr. Junay's deposition. (Dep.Tr. 27:24–30:25, 42:8–14, 42:20–22, 78:11–79:2, 11:21–11:22, 15:10–16:11 (2/3/92)). Nautilus did not specifically offer the above excerpts until the second to last day of trial, when it submitted its Supplemental Memorandum to the Court (Tr. 2481:23–2482:5 (1/12/94)). Nautilus' general offer of admissibility of Mr. Junay's transcript earlier in the trial (Tr. 1638:9–1640:19 (12/28/93)) did not identify in particular the aforementioned excerpts and its offering thereof did not suffice as an opportunity for Mr. Junay to explain or deny his statements.

■ Coastal renewed its objection to the admission of such excerpts when they were offered on the second to last day of trial. (Tr. 2482:6–7 (1/12/94)). Thus Coastal objected to the admissibility of the evidence in a timely and appropriate manner as specified in Federal Rule of Evidence 103(a)(1), and did not waive the right to have the witness be confronted with the inconsistent statements and to further interrogate the witness.[2]

By failing to confront Mr. Junay with the inconsistent statements prior to their introduction into evidence, Nautilus ran the risk of Mr. Junay becoming unavailable. The touchstone of admissibility under Rule 613(b) is continued availability of the witness for recall to explain the inconsistent statement. *Wammock,* 793 F.2d at 1522 (citing *United States v. McLaughlin,* 663 F.2d 949, 953 (9th Cir.1981)). Accordingly, the Court concludes that Nautilus did not provide an ample opportunity for Mr. Junay to be confronted with the aforementioned six inconsistent

statements offered on the second to last day of trial.

### 3. *Admissible deposition excerpt pursuant to Federal Rule of Evidence 801(d)(2)*

At trial, Nautilus successfully entered a group of consolidated statements of party-opponents, Exhibit 688, into evidence pursuant to Federal Rule of Evidence 801(d)(2). (Tr. 1167:11–1168:7 (12/20/93)). Exhibit 688 consisted in part of the following excerpt from Mr. Junay's deposition of February 3, 1992: Dep.Tr. 11:23–15:9 (2/3/92). Coastal made no objection to the admissibility of such evidence at that time, and thus waived its right to object to the ruling. Federal Rule of Evidence 103(a)(1).

The Court notes that it admits only sections 11:23–15:9 of the deposition in question, and denies Nautilus' request to admit section 11:21–16:11 in its entirety, on grounds that no proper foundation was made for sections 11:21–11:22 and 15:10–16:11.

### C. Sketch drawn by James Doran

■ James Doran, a commercial diver who obtained paint and fuel samples from the suspected impact area, testified at trial on behalf of Coastal as an expert witness. While Mr. Doran was being cross-examined by counsel for Nautilus, he drew a sketch with red ink on a hydrographic survey which had been previously admitted into evidence as Exhibit 413A. (Tr. 1922:21–1923:21, 1927:2–1928:2 (1/5/94)).

Coastal objects to the admissibility of this sketch as proposed Exhibit 707. (Tr. 2476:24–2477:16 (1/12/94)). For the following reasons, the Court finds that the sketch drawn by Mr. Doran is admissible for purposes of illustrating Mr. Doran's whereabouts during his dive. The issue of distortion or inaccuracy in the scale of Mr. Doran's drawing is not applicable to the admissibility

---

**2.** The Court notes the general rule that foundation objections require specificity. *See United States v. Willis,* 482 F.2d 1034 (8th Cir.1973) (where the Court of Appeals held that reversal was not required with regard to alleged improper admission of exhibits without sufficient foundation in the absence of a specific objection on

foundation grounds). Having considered all objections made by Coastal and all subsequent briefs and explanations submitted by both parties, the Court finds that Coastal's objections taken in totality were sufficiently specific to constitute a valid foundation objection.

of the drawing, but, instead, is applicable to the weight of the evidence assigned by the trier of fact.

Exhibit 413A, upon which Mr. Doran had drawn the sketch in question, had been properly authenticated and admitted into evidence. As specified in Federal Rule of Evidence 901(a), authentication as a condition precedent to admission is satisfied by evidence showing that the matter in question is what its proponent claims. Federal Rule of Evidence 901(a). By Mr. Doran drawing upon the exhibit as part of his testimony, he is merely making illustrations which will help the trier of fact better understand the testimony. Accordingly, the Court finds that Mr. Doran's sketch, Exhibit 707, is admissible.

### III. CONCLUSION

For the reasons discussed above, the Court denies plaintiff's motion to suppress portions of the Coast Guard report, grants in part and denies in part plaintiff's motion to admit the prior inconsistent statements, and denies defendant's motion to exclude the sketch drawn by James Doran.