court is persuaded by the minority view on the issue."

*Schallehn,* at 1331.

Approximately two (2) months after the Iowa District Court rendered its decision in *Schallehn,* the Eighth Circuit Court of Appeals rendered its decision in *Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377 (8th Cir.1995). The issue before the *Lenhardt* Court was whether an individual defendant, who was the sole shareholder, sole director, and president of the corporate defendant employer of the plaintiff, could also be considered an "employer" within the meaning of the Missouri Human Rights Act (MHRA). The Court began its analysis by noting that Title VII, the ADEA, and the MHRA are "similar statutory schemes that prohibit discrimination in employment against protected classes." *Lenhardt,* at 380. The Court further found that the federal statutes include definitions of "employer" that are analogous to the MHRA's definition of the term. *Lenhardt,* at 380. The Court then reviewed numerous federal decisions circuit-wide (Title VII and ADEA cases), including its own recent decision of *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254 (8th Cir.1994), and found that the "more recent cases reflect a clear consensus on the issue before us: supervisors and other employees cannot be held liable under Title VII in their individual capacities." *Lenhardt,* at 381. Although the Court recognized that it was not deciding the issue of individual employee liability under Title VII when the employee is the Title VII plaintiff's supervisor, it did reach the conclusion that:

> "Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII. Thus, we believe the Missouri Supreme Court would hold that the definition of the term employer in the MHRA does not subject employees, including supervisors or managers, to individual liability."

*Lenhardt,* at 381.

Although the Eighth Circuit has yet to definitively state that employee-supervisor individual liability cannot be imposed under Title VII or the ADEA, its holdings in *Smith, supra,* and *Lenhardt, supra,* clearly indicate that such a holding will ultimately be made. The Eighth Circuit views Title VII and the ADEA as having analogous definitions of "employer"; it has held that a Title VII plaintiff's co-workers cannot be held individually liable even if such co-workers might be considered agents of their employer; and it has embraced the majority view that an employee, even one possessing supervisory authority, is not an "employer" upon whom liability can attach under Title VII. In light of these findings, this Court determines that individual liability cannot attach to defendants Brod, Bergen, and Sokolowski.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Brod, Bergen, and Sokolowski's motion to dismiss (# 27) be and is **GRANTED**. The named individual defendants are hereby **DISMISSED** from this cause of action.

Darlene K. FOX, individually, as personal representative, and as Administratrix of the Estate of Raymond S. Fox, deceased, Plaintiffs,

v.

UNITED STATES of America and Robert Anderson, Defendants.

Nos. C–94–0941 SI, C95–0519–SI and C94–2648–SI.

United States District Court, N.D. California.

Feb. 12, 1996.

See also 1996 WL 440681.

Kenneth W. Rosenthal, Molligan Cox & Moyer, San Francisco, CA, for Darlene K. Fox.

Warren A. Schneider, U.S. Dept. of Justice, Torts, Civil Division, San Francisco, CA, for United States of America.

Paul Gary Sterling, Robert J. Finan, Finan Sterling & Clack, San Francisco, CA, for Robert Anderson.

Paul Gary Sterling, Christopher A. Bidwell, Sterling & Clack, San Francisco, CA, for Aleda Anderson.

## ORDER ON MOTIONS IN LIMINE

ILLSTON, District Judge.

On February 2, 1996, the Court heard argument on two motions in limine, filed in tandem by plaintiffs Fox et al. and defendant Robert Anderson (hereinafter "movants"). One motion seeks to exclude evidence of negligence by the owners or crew of the S/V GRIFFIN in operation of the vessel prior to the rescue ("pre-rescue negligence"), and the second seeks to allow a Coast Guard Investigative Report concerning the accident to be admitted into evidence, subject to a FRE 803(8) showing. Having considered the arguments of counsel and the papers submitted, the Court rules that evidence of alleged pre-rescue negligence will not be admitted for purposes of assessing comparative fault among the parties, unless the evidence is relevant to the rescue itself; and that the Coast Guard Investigative Report may be admitted into evidence if it meets the trustworthiness standard of *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) and the requirements of FRE 803(8).

## BACKGROUND

On November 14, 1993, on the high seas approximately 50 miles off the coast of Monterey, California, two naval vessels owned and operated by the United States attempted the rescue of a distressed sailboat, the S/V GRIFFIN, owned and operated by Robert Anderson. Raymond Fox, husband of plaintiff Darlene Fox, Penny Walrath, Scott Jaroch, and Robert Wess were passengers/crew on the GRIFFIN. During the attempted rescue, the GRIFFIN and one of the naval vessels, USS FLINT, collided, resulting in the death of Raymond Fox. The other occupants of the GRIFFIN sustained injuries and the GRIFFIN sank.

The Coast Guard assumed responsibility for investigating the incident. The Coast Guard investigator conducted an extensive investigation and drafted a ten page report containing: 1) a summary of the incident; 2) Findings of Fact including vessel data, personnel data, weather information, and a chro-

nological listing by hour and minute, of events occurring on the date of the casualty, November 14, 1993; 3) a listing of "Related Factors;" 4) Conclusions; and 5) Opinions and Recommendations.[1]

Darlene K. Fox, Raymond Fox's widow and personal representative, filed a wrongful death action against the United States and Robert Anderson. The other passengers also brought actions for personal injury and loss of personal property against the United States and Anderson. Anderson filed a cross-complaint against the United States for indemnity, damages for personal injury and damages for the loss the GRIFFIN and its contents. The United States filed a cross-complaint for indemnity against Anderson. All actions have been consolidated and are set for trial to the Court.

## DISCUSSION

### A. *Exclusion of Evidence Relating to Pre–Rescue Negligence*

■ Movants seek to exclude evidence of alleged pre-rescue negligence on the part of Anderson and the crew from the Court's determination of comparative fault between the United States and Anderson. Movants argue that the United States plans to introduce evidence that Anderson was negligent in not properly preparing and undertaking the voyage. The Ninth Circuit addressed the issue of the admissibility of pre-rescue negligence for the purpose of assessing comparative fault in *Berg v. Chevron USA, Inc.,* 759 F.2d 1425 (9th Cir.1985). In *Berg* the court made a careful distinction between pre-rescue negligence, which caused the problems which necessitated the rescue, and negligence which occurred after the accident. "The relevant negligence of the person rescued is not that which causes the initial accident but rather that which, whether oc-

curring before or after the accident, relates to the rescue and either worsens the victim's condition or hinders the rescue." *Id.* at 1431. Evidence of alleged pre-rescue negligence will not be admitted for the purpose of assessing comparative fault between the United States and the other parties, unless the evidence is related to the rescue itself.[2]

### B. *Admissibility of the Coast Guard Report*

■ Movants contend that the Supreme Court's decision in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), interpreting Federal Rule of Evidence (FRE) 803(8)(C), governs the admissibility of the Coast Guard Investigative Report. FRE 803(8) creates an exception to the hearsay rule for certain public documents, as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In 1988, the Supreme Court of the United States addressed the issue of whether the conclusions and opinions of a Navy investigator's accident report could be admitted into evidence, in *Beech Aircraft,* 488 U.S. 153, 109 S.Ct. 439. There, after an airplane crash killed two Navy pilots, the Navy investigator wrote a "JAG Report," pursuant to the authority of the Manual of the Judge Advocate General of the Navy. The Supreme Court resolved a conflict between the circuits on whether admissible "factual findings" for purposes of FRE 803(8) included the conclusions and opinions of the investigator. After an extensive review of the legislative history

---

1. The Court has not seen the report. Since this is to be a court trial, none of the parties felt it appropriate to submit the report with the motion. Specific findings of ultimate admissibility will have to await, of course, a full review of the report.

2. The parties agree that the applicable maritime law for determining the United States' negligence is from *Berg,* 759 F.2d at 1430: "A rescuer

will be held liable only (1) for negligent conduct that worsens the position of the victim or (2) for reckless and wanton conduct in performing the rescue." Movants apparently intend to argue that the United States' rescue worsened the condition of the GRIFFIN. Any evidence relevant to showing that the United States' rescue attempt worsened the condition of the GRIFFIN and her occupants is admissible for that purpose.

behind the enactment of the Rule, the Supreme Court held as follows:

> [P]ortions of investigatory reports otherwise admissible under 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.

*Id.* at 170, 109 S.Ct. at 450.

The Court found that the rule assumes admissibility, but the district court has an obligation to determine if the report is trustworthy and to delete portions of the report that the court finds to be untrustworthy. *Beech Aircraft,* 488 U.S. at 167, 109 S.Ct. at 448–49. Movants contend that the Coast Guard investigation in the present case is factually analogous to *Beech Aircraft.* Movants argue that the whole report should be admitted, if the Court finds the report to be trustworthy.

Defendants argue that *Beech Aircraft* is inapplicable and that *Huber v. U.S.,* 838 F.2d 398 (9th Cir.1988) governs the disposition of this issue. *Huber,* which was decided before *Beech Aircraft,* arose out of a marine accident involving the sinking of a yacht resulting in the death of two crew members. Plaintiff brought a suit against the United States and a private shipping company, alleging negligent rescue efforts including Coast Guard negligence in executing the rescue. The Coast Guard investigated the accident and issued two reports finding "evidence of errors in judgement or improper procedures on the part of the Coast Guard and that no other party was at fault for the sinking." *Huber,* 838 F.2d at 401. The district court found the two reports to be non-hearsay admissions against interest under FRE 801(d)(2) and found the United States solely liable for the accidents.[3] On appeal, the United States argued that the Coast Guard reports had been improperly admitted into evidence. The United States relied upon a Coast Guard regulation, 46 C.F.R. § 4.07–1(b), which provides:

> The investigation of marine casualties and accidents and determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are *not intended to fix civil or criminal responsibility.* (emphasis added)

The Ninth Circuit held the conclusions and opinions inadmissible under the Coast Guard regulation, because the reports stated that the Coast Guard was solely responsible for the accident. The court referred by analogy to statutes (i.e., Congressional enactments) which prohibit the use of certain other governmental investigative reports in private litigation, e.g. 49 U.S.C.App. § 1903(c) dealing with reports of the National Transportation Safety Board. The court noted "[t]hat all or part of the reports might, in the absence of a statute or regulation such as this, be admissible under Fed.R.Evid. 801(d)(2) or some other rule is immaterial." *Huber* 838 F.2d at 403. The court stated that admitting the report would defeat the purpose of 46 C.F.R. § 4.07–1(b) to promote maritime safety. If the report were admitted into evidence, this would discourage Coast Guard personnel in the future from being candid about the causes of an accident. *See In re Cleveland Tankers, Inc.,* 67 F.3d 1200, 1208 (6th Cir. 1995) (approved the reasoning of *Huber*); *contra In re Complaint of Nautilus Motor Tanker Co.,* 862 F.Supp. 1251, 1256 (D.N.J. 1994) (rejected the rationale of *Huber* where the Coast Guard's interests were not at risk in the proceeding).[4]

Defendant argues that the Coast Guard Investigation Report in this case is identical in format to the one in *Huber* and thus, the report cannot be fully admitted.[5] Defendant distinguishes *Beech Aircraft* by arguing that *Beech Aircraft* did not involve any statutory or regulatory preclusion, such as 46 C.F.R. § 4.07–1(c).

Movants argue that 46 C.F.R. § 4.07–1(b), a Coast Guard regulation, cannot have pre-

---

**3.** No analysis of an exception to the hearsay rule under FRE 803(8) was made.

**4.** *Nautilus* is on appeal to the Third Circuit.

**5.** The court in *Huber* admitted the factual findings of the report, but not the conclusions and recommendations.

clusive effect on the Federal Rules of Evidence, which are themselves statutory enactments of the Congress. The fundamental starting point for admissibility analysis under the Federal Rules of Evidence is relevance:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.

FRE 402. Movants argue that an agency regulation, which does not rise to the level of an "Act of Congress" as set out in FRE 402, cannot trump congressionally enacted rules of evidence.[6] This point, which was not discussed by the court in *Huber*, is consistent with the tenor and approach used by the Supreme Court in evaluating admissibility of such reports under FRE 803(8).

*Huber*'s analysis of the use of a Coast Guard report as an "admission against interest" is entirely different from the analysis presented by movants here, which concerns FRE 803(8) as interpreted by the Supreme Court in *Beech Aircraft*. Moreover, the *Huber* decision did not address the primacy of Congressional enactments, including the rules of evidence, over agency regulations like 46 C.F.R. § 4.07–1(b).

The holding in *Beech Aircraft* controls the disposition of this issue. The Coast Guard report will be admitted into evidence if meets the "trustworthiness" standard set forth in *Beech Aircraft*.

Accordingly, IT IS HEREBY ORDERED THAT:

1) Evidence of alleged pre-rescue negligence will not be admitted for the purpose of assessing comparative fault unless the evidence is related to the rescue itself; and

2) The Coast Guard report will be admitted into evidence if the report meets the

trustworthiness standard of FRE 803(8) and *Beech Aircraft*.

IT IS SO ORDERED.

---

6. The fact that current law contains no "statutory prohibition" against admitting Coast Guard accident reports into evidence is underscored by legislation now pending in Congress. The House of Representatives passed a bill on May 9, 1995, which would bar or limit use of Coast Guard reports investigating marine casualties in civil proceedings unless the Secretary of Transportation authorized the use of the report. H.R. 1361, 104th Cong., 1st Sess. § 414. The House committee report explaining § 414 states that "there is no statutory prohibition on the use of opinions, recommendations, deliberations, and conclusions contained in marine casualty investigation reports." H.R.Rep. No. 104–106, 104th Cong., 1st Sess., Sec. 414, at 51 (1995).